**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MMI, Inc.,<br><br>    Plaintiff,<br><br>vs.<br><br>Baja, Inc. d/b/a Baja Motor Sports; Dick's Sporting Goods, Inc.; The Pep Boys Manny Mo & Jack of California; Northern Tool & Equipment Compnay, Inc.; Tractor Supply, Inc.; Rural King Holding Company; Central Purchasing, LLC d/b/a Harbor Freight Tools; O'Reilly Automotive, Inc.; Hensim USA Corporation; Sears Roebuck & Co.; Recon Enterprises, LLC d/b/a Recon Motor Sports; Blain Supply, Inc.,<br><br>    Defendants. | No. CV 10-0496-PHX-JAT<br><br>**ORDER** |

Pending before the Court are: (1) Defendant Baja, Inc.'s Motion to File Exhibit Under Seal (Doc. 12); and (2) Defendant Rural King Holding Company's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (Doc. 39). The Court has reviewed the pleadings, briefs, declarations and exhibits submitted by the parties. For the reasons cited herein, the Court grants Defendant Baja, Inc.'s Motion to File Exhibit Under Seal and grants Defendant Rural King Holding Company's Motion to Dismiss.

# DEFENDANT BAJA, INC.'S MOTION TO FILE EXHIBIT UNDER SEAL

## I. Factual Background

Plaintiff MMI, Inc. ("MMI") filed a Complaint on March 3, 2010, alleging patent infringement by each named Defendant. (Doc. 1). MMI owns the rights to U.S. Patent No. D591,203S ("203S") for the design of a motorized mini bike. *Id.* MMI alleges that the mini bike "contains numerous original features, including an asymmetrical frame, an ornamental steel hoop for retention of the rear fender, an ornamental steel hoop for the rear lift handle, and a unique frame configuration which allows a wide range of uses and applications." (*Id.* at ¶18). MMI alleges that each named Defendant makes, uses, sells, or offers to sell the mini bike "in the United States, including within this judicial district." (*Id.* at ¶26).

Defendant Baja, Inc. ("Baja") filed an Answer and Counterclaim on March 12, 2010. (Doc. 9). Baja denies that it infringed 203S and alternatively claims that 203S is an invalid patent. (*Id.* at ¶¶29-30). Baja seeks a declaratory judgment that it did not infringe 203S and that 203S is an invalid and unenforceable patent. (*Id.* at ¶¶17-28). Baja also alleges that MMI improperly applied for 203S and brought this suit in bad faith, violating the Sherman Act. (*Id.* at ¶¶29-34). In its Answer and Counterclaim, Baja filed the License Agreement between Baja and MMI in which MMI licensed Baja to sell the mini bike. (*Id.* at Exhibit 3). This License Agreement contains the license terms and conditions, including the royalty rate, agreed upon by Baja and MMI. *Id.*

Baja moves the Court to seal Exhibit 3 of its Answer and Complaint, (Doc. 9), claiming that it inadvertently filed this Exhibit without asking that it be filed under seal. (Doc. 12 at 1). Baja's motion is unopposed by MMI.

## II. Legal Standard

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 597 (1978). This right protects public interest in understanding both the judicial process and significant public events. *Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). However, Courts have found exceptions to this general rule where "compelling

reasons . . . outweigh the public's interest in disclosure and justify sealing court records." *Id.* These exceptions arise when the court fears that a non-party may "use [the] records to gratify private spite, promote public scandal, circulate libelous statements, or *release trade secrets*." *Id.* (internal quotations omitted) (emphasis added). A "trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Restatement of Torts § 757, cmt. b; *see also Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir.1972) (adopting the Restatement definition); *In re Electronic Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) (unpublished) (finding license agreement to be a trade secret). The party moving to seal bears the burden of proof for each particular document it wishes to seal. *Foltz v. State Farm Mutual Auto Ins.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

Courts relax the presumption that records should not be sealed for non-dispositive filings. *See Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). In a non-dispositive motion, a party need only make a particularized showing of "good cause" to seal a document instead of the normal "compelling reasons" standard. *Kamakana*, 447 F.3d at 1180. This is because "the public has less of a need for access to court records attached only to non-dispositive [filings] [since] those documents are often unrelated, or only tangentially related, to the underlying cause of action." *Id.* at 1179.

**III. Analysis**

Here, Baja asks this Court to seal Exhibit 3 of its Answer and Complaint, which is the License Agreement between MMI and Baja for the sale of MMI's allegedly patented mini bikes. Since Baja filed Exhibit 3 with a non-dispositive filing, the good cause standard applies. *See Kamakana*, 447 F.3d at 1180. The Court finds that Baja has made a sufficiently particularized showing of good cause to seal the document.

Baja contends that the License Agreement contains "information [that] would have economic value to others, including Baja's manufacturers, customers, and competitors." (Doc. 12 at 1). This information includes the royalty rate charged to licensees and other

terms and conditions of the license. (Doc. 9 at Exhibit 3). Baja further contends that the information "is not generally known by others and is not readily ascertainable by proper means." (Doc. 12 at 1-2). This License Agreement falls within the Restatement definition of a trade secret. *See* Restatement of Torts § 757, cmt. b ("information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."). *See also In re Electronic Arts, Inc.*, 298 Fed. Appx. at 569 (finding license agreement to be a trade secret). The royalty rate Baja charges its licensees, and the terms and conditions to which Baja subjects its licensees, are business decisions that affect Baja's profitability. These decisions need not be made publicly available to Baja's competitors through the Court records. *See Kamakana*, 447 F.3d at 1179.

Furthermore, Baja's request to seal only one document, and not the whole record, is sufficiently particularized. *See Foltz*, 331 F.3d at 1130 (9th Cir. 2003) (moving party has burden of proof on each document it wishes to seal). Finally, the Court notes that the public has a diminished need for this document because it is "only tangentially related[] to the underlying cause of action." *Kamakana*, 447 F.3d at 1179. Here, the underlying lawsuit is a patent infringement case, not a breach of contract claim. Therefore, Baja has made a sufficiently particularized showing of good cause to excise the document from the record and file it separately under seal.

## IV. Conclusion

For the foregoing reasons, the Clerk shall seal Exhibit 3 of Docket 9. Parties should not cite Exhibit 3 of Docket 9 in their motions until a redacted version of the document is filed with the Court.

## **DEFENDANT RURAL KING HOLDING COMPANY'S MOTION TO DISMISS**

## I. Facts

As recited previously in this Order, Plaintiff MMI, Inc. ("MMI") filed a Complaint on March 3, 2010, alleging patent infringement by each named Defendant. (Doc. 1). MMI owns the rights to U.S. Patent No. D591,203S ("203S") for the design of a motorized mini

- 4 -

bike. *Id.* MMI alleges that the mini bike "contains numerous original features, including an asymmetrical frame, an ornamental steel hoop for retention of the rear fender, an ornamental steel hoop for the rear lift handle, and a unique frame configuration which allows a wide range of uses and applications." (*Id.* at ¶18). MMI alleges that each named Defendant makes, uses, sells, or offers to sell the mini bike "in the United States, including within this judicial district." (*Id.* at ¶26).

Defendant Rural King Holding Company ("Rural King Holding") filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction on May 21, 2010 (Doc. 39). Included in the Motion is the Declaration of Gary Melvin, the President of Rural King Holding. (*Id.* at Exhibit 1). In his Declaration, Mr. Melvin states that Rural King Holding is an Illinois corporation with its registered office in Illinois. (*Id.* at Exhibit 1, ¶2). Mr. Melvin also states that Rural King Holding does not operate any business or sell any products. (*Id.* at Exhibit 1, ¶3). Rather, he states that Rural King Holding "licenses its 'RURAL KING' mark to separate, independently owned business entities, that operate 'RURAL KING' retail stores in Illinois, Indiana, Kentucky, Tennessee, Ohio, Michigan and Missouri." (*Id.* at Exhibit 1, ¶4). He states that Rural King Holding "does not operate or hold any interest in the website at the URL ruralking.com." (*Id.* at Exhibit 1, ¶5).

Mr. Melvin further states that Rural King Holding does not "advertise, offer to sell, or sell [the mini bike involved in this lawsuit] in the United States or in Arizona." (*Id.* at Exhibit 1, ¶9). He states that Rural King Holding is not registered to do business in Arizona, does not have a registered agent in Arizona, does not own or lease any property in Arizona, does not pay taxes in Arizona, and does not have offices, employees, equipment, operations, bank accounts, telephone listings or facsimile listings in Arizona. (*Id.* at Exhibit 1, ¶10). Based on Mr. Melvin's Declaration, Rural King Holding argues that Arizona courts do not have personal jurisdiction over Rural King Holding. (*Id.* at 1-5).

MMI alleges that Rural King Holding maintains the website at the URL ruralking.com. (Doc. 56 at 2). This website advertises and offers to sell the mini bike involved in this lawsuit. (*Id.* at Exhibit 1). The website also allows visitors to download the

1  owners' manual for the mini bike, which is published by MMI. (*Id.* at Exhibit 1, Exhibit 4).

2  The "About Us" section of ruralking.com reads:

> We opened RuralKing.com to the public in 1997, in an effort to reach out to the world, offering products that may not be available in regions our current stores do not service. Our goal is to use the internet to let the world know what a great organization Rural King is, as well as provide access to our diverse product line on a national level.

(*Id.* at Exhibit 1). MMI therefore alleges that the website sells its patented mini bikes throughout the United States, including in Arizona. (*Id.* at 3). The contact page on ruralking.com lists the address 4216 Dewitt Ave., Mattoon, IL 61938. (*Id.* at Exhibit 1). It lists this same address, as well as the same telephone number, for "Internet Sales" and "Corporate Office." (*Id.*). This is the same address at which Rural King Holding accepted service of MMI's complaint. (*Id.* at Exhibit 2). Thus, MMI alleges that ruralking.com and Rural King Holding are the same entity. (*Id.* at 3, n.1).

## II.     Legal Standard

Federal Circuit law governs personal jurisdiction in patent infringement actions. *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). However, regional circuit law applies if the determination of personal jurisdiction is no longer "intimately involved in the substance of enforcement of the patent right." *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,* 297 F.3d 1343, 1348 (Fed. Cir. 2002).

If the district court does not hear testimony or make findings of fact and permits the parties to submit only written materials, then the plaintiff must make only a prima facie showing of jurisdictional facts to defeat the defendant's motion to dismiss. *See id.* at 1347. In considering a motion to dismiss, a district court must accept the plaintiff's complaint and all uncontroverted allegations contained therein as true and resolve any factual conflicts in the affidavits in plaintiff's favor. *Id.* However, if the defendant submits evidence contradicting an allegation in the complaint, plaintiff must provide evidence to support its jurisdictional allegation; plaintiff may not simply fall back on conclusions of law stated in the complaint. *Schering Corp. v. U. S.*, 626 F.2d 162, 167 (Cust. & Pat. App. 1980) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)).

A district court may assert personal jurisdiction over a nonresident defendant only when doing so would be (1) allowed by the forum state's long-arm statute, and (2) consistent with due process. *See Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 857 (Fed. Cir. 1999). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); s*ee Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997); *Uberti v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995.), *cert. denied*, 516 U.S. 906 (1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution").[1] Therefore, the sole question here is whether the exercise of jurisdiction over the defendants would comport with federal due process.

Absent traditional bases for personal jurisdiction (*i.e.*, physical presence, domicile, and consent), the Due Process Clause requires that nonresident defendants have certain *minimum contacts* with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). The Due Process Clause protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal citations omitted). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 472 (internal citations omitted).

Generally, there must be some act by which a defendant "purposely avail[s]" himself of the "privilege of conducting activities within the forum State, thus invoking the benefits

---

[1] Rule 4.2(a) provides, in pertinent part: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."

- 7 -

1 and protections of its laws." *Id.* at 475. The "purposeful availment" requirement is satisfied
2 if the "the contacts proximately result from actions by the defendant *himself* that create a
3 substantial connection' with the forum state." *Id.* A defendant's "random," "fortuitous," or
4 "attenuated" contacts with the forum state will not satisfy the "purposeful availment"
5 requirement. *Id.* The placement of a product in the stream of commerce without more is not
6 an act of the defendant purposely directed to the forum state. *Asahi Metal Indus. Co. v.*
7 *Superior Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion). Additional conduct of the
8 defendant that may indicate an intent or purpose to serve the market in the forum state
9 includes designing the product for the market in the forum state, advertising in the forum
10 state, establishing channels for providing regular advice to customers in the forum state, or
11 marketing the product through a distributor who has agreed to serve as the sales agent in the
12 forum state. *Id.*

13 If a court determines that a defendant's contacts with the forum state are sufficient to
14 satisfy the Due Process Clause, then the court must exercise either "general" or "specific"
15 jurisdiction over the defendant. *See Helicopteros Nacionales de Colom. v. Hall*, 466 U.S.
16 408, 414-15 nn.8-9 (1984). The nature of the defendant's contacts with the forum state will
17 determine whether the court exercises general or specific jurisdiction over the defendant. *Id.*
18 If the cause or causes of action in the case arise out of the defendant's contacts with the
19 forum state, the Court may assert "specific jurisdiction." *Id.* at 414-416. If the defendant's
20 contacts with the forum state are continuous and systematic, the Court will have "general
21 jurisdiction." *Id.* If the cause of action does not arise out of defendant's contacts with the
22 forum state and the defendant has only sporadic contacts with the forum state, the Court will
23 not have specific or general jurisdiction. *Id.* at 415-416.

24 **III. Analysis**

25 As a preliminary matter, this Court must determine whether or not Rural King Holding
26 is a distinct legal entity from ruralking.com in order to assess Rural King Holding's contacts
27 with the state of Arizona. Based on the evidence presented, MMI has not demonstrated that
28 Rural King Holding and ruralking.com are the same legal entity. The Court finds that Rural

King Holding does not have sufficient minimum contacts with the state of Arizona and is therefore not subject to personal jurisdiction in the District of Arizona.

### A. Imputing ruralking.com's Forum Contacts on Rural King Holding

Rural King Holding argues that it is a distinct legal entity from ruralking.com and that personal jurisdiction over Rural King Holding may not be asserted on the basis of ruralking.com's contacts with Arizona. (Doc. 58 at 5). MMI argues that, since Rural King Holding and ruralking.com are housed at the same address and have the same owner, this Court should consider Rural King Holding and ruralking.com to be the same entity. (Doc. 56 at 3, n.1). The Court finds that MMI has not shown that Rural King Holding and ruralking.com are the same legal entity. Therefore, the Court will not impute ruralking.com's alleged contacts with the state of Arizona to Rural King Holding.

"[I]t is well-settled law that, absent a piercing of the corporate veil . . . a parent company is not liable for the acts of its subsidiary." *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1349 (Fed. Cir. 2010); *see also Harris Rutsky & Co. Ins. Servs., Inc.*, 328 F.3d 1122, 1134 (9th Cir. 2003); *Patterson v. Home Depot, USA, Inc.*, 684 F. Supp. 2d 1170, 1177 (D. Ariz. 2010). Similarly, a holding company is not vicariously liable for the actions of its licensees. *See Oberlin v. Marlin Am. Corp.*, 596 F.2d 1322 (7th Cir. 1979); *L.A. Gear, Inc. v. E.S. Originals, Inc.*, 859 F. Supp. 1294, 1300 (C.D. Cal. 1994). However, there are two theories under which a plaintiff may pierce the corporate veil and overcome the legal distinction between a parent holding company and its subsidiary or licensee for purposes of personal jurisdiction: (1) if the parent company is merely an alter ego of the subsidiary created to shield the subsidiary from litigation in an unfavorable forum; or (2) if the subsidiary is the general agent of the parent in the forum. *See Harris Rustky*, 328 F.3d at 1134. Since piercing the corporate veil is not "intimately involved in the substance of enforcement of the patent right," this Court will apply Ninth Circuit precedent to this issue. *See Deprenyl Animal Health, Inc.*, 297 F.3d at 1348; *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1561 (Fed. Cir. 1994).

Here, Rural King Holding asserts that it is a different legal entity than ruralking.com.

1  (Doc. 39 at 4). Rural King Holding has presented evidence, through the Declaration of its
2  President Gary Melvin, that it does not operate or hold any interest in ruralking.com. (*Id.* at
3  Exhibit 1, ¶5). Mr. Melvin further asserts that Rural King Holding does not operate any
4  business or sell any products; rather, Rural King Holding licenses its trade name and service
5  mark to independent business entities. (*Id.* at Exhibit 1, ¶¶4-5). Rural King Holding asks
6  the Court to find that it merely licenced its trade name and service mark to the separate entity
7  that operates ruralking.com.² If Mr. Melvin's Declaration remains undisputed, this Court
8  would not impute ruralking.com's contacts with the state of Arizona onto Rural King
9  Holding. *See Harris Rutsky*, 328 F.3d at 1134.

10  MMI argues that since Rural King Holding and ruralking.com share the same address
11  and the same owner, they must be the same entity. (Doc. 56 at 3, n.1). The Court must
12  accept as fact MMI's assertion that Rural King Holding and ruralking.com reside at the same
13  address based on the evidence submitted in MMI's Response. (*See* Doc. 56 at Exhibit 1);
14  *Deprenyl*, 297 F.3d at 1347 (Court must resolve any factual conflicts in plaintiff's favor).
15  The Court will also accept as fact, for the purposes of this motion, MMI's assertion that
16  Rural King Holding and ruralking.com share common ownership.³

17  Even accepting MMI's allegations as true, as the Court must do in a motion to
18  dismiss, *Deprenyl*, 297 F.3d at 1347, the Court finds that MMI has not shown that Rural
19  King Holding and ruralking.com are the same entity under an alter ego theory or an agency
20  theory. Therefore, the Court will not impute ruralking.com's alleged contacts with the state

---

²The separate entity that operates ruralking.com remained nameless in the pleadings before this Court. Thus, the Court continues to refer to this entity as ruralking.com.

³Since it will not affect the Court's ruling, the Court assumes *in arguendo* that the two entities share common ownership. Were the issue dispositive, however, the Court would not make such an assumption. Mr. Melvin stated in his Declaration that Rural King Holding and ruralking.com *do not* share common ownership, (Doc. 39 at Exhibit 1), and MMI has not provided the Court with any evidence to suggest otherwise. A plaintiff may not simply fall back on the conclusions of law stated in their complaint when a defendant presents contradictory evidence, as Mr. Melvin did here. *See Schering Corp.*, 626 F.2d at 167.

- 10 -

of Arizona to Rural King Holding.

### 1. Alter Ego

MMI has not alleged a prima facie case that ruralking.com is a mere alter ego of Rural King Holding. "To demonstrate that the parent and subsidiary are not really separate entities and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001). This test prevents corporations from "shield[ing] [themselves] from liability based on [their] subsidiaries' activities" when the parent and the subsidiary are different in name only. *Id.*; *see also Rollins Burdick Hunter of So. Cal., Inc. v. Alexander & Alexander Serv., Inc.*, 206 Cal. App. 3d 1, 11 (1988) (alter ego test met where parent corporation controlled "[e]very facet of its business-from broad policy decisions to routine matters of day-to-day operation . . . .").

The Supreme Court has commented on the level of acceptable unity of interest between separate entities, saying:

> [I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts. This recognition that the corporate personalities remain distinct has its corollary in the well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership . . . [Appropriate unity of interests include:] monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures.

*U.S. v. Bestfoods*, 524 U.S. 51, 69, 72 (1998) (internal marks and citations omitted). Courts have also found that the fact that two corporate entities share the same address does not impute one entity's contacts with the forum state on the other entity. *See United Consumers Club, Inc. v. Prime Time Mktg. Mgt., Inc.*, 2009 WL 2762763, *3 (N.D. Ind. 2009) (unpublished) (finding that holding company and subsidiary had same address not sufficient for service); *Dymits v. Am. Brands, Inc.*, 1996 WL 751111, *13 (N.D. Cal. 1996)

- 11 -

(unpublished) (same). This is because distinct legal entities may share the same address. *See id.*

MMI's evidence that ruralking.com and Rural King Holding share the same address and owner do not satisfy the first prong of the alter ego test because distinct legal entities may have a common address and ownership. *See Bestfoods*, 524 U.S. at 69, 72; *United Consumers Club*, 2009 WL 2762763 at *3. Absent the allegation that Rural King Holding is involved in the operation of ruralking.com in any way, MMI has failed to state a prima facie case that Rural King Holding is an alter ego of ruralking.com. Thus, ruralking.com's contacts with the state of Arizona will not be imputed on Rural King Holding on this basis.

### 2. Agency

MMI has also failed to state a prima facie case that ruralking.com is Rural King Holding's general agent in the state of Arizona. The agency test is satisfied by showing that the subsidiary performs services that are "sufficiently important to the [parent] corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994). Like the alter ego test, this test prevents parent corporations from hiding behind a fictional corporate distinction to avoid liability in the judicial district in which they do business. *See Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1085 (E.D. Pa. 1982) (cited with approval in *Unocal*, 248 F.3d at 926).

Courts have spoken specifically on the application of the agency test to holding companies. *See, e.g.*, *Gallagher*, 781 F. Supp. at 1087; *Bellomo v. Penn. Life Co.*, 488 F. Supp. 744, 746 (S.D.N.Y. 1980) (cited with approval in *Unocal*, 248 F.3d at 928). Unlike a parent company that manufactures a product and might try to sell it through a subsidiary to avoid liability in the subsidiary's judicial district, a holding company invests in other companies who perform their own operations and often sell their own products. *See Gallagher*, 781 F. Supp. at 1087. Therefore, a holding company that invests in multiple subsidiaries is really in the business of investing, not selling products. *See Bellomo*, 488 F. Supp. at 746.

1       Here, MMI asserts that ruralking.com and Rural King Holding share the same address and owner. (Doc. 56 at 2-3, n.1). However, MMI has not disputed Mr. Melvin's claim that Rural King Holding is a holding company that licenses a trade name and a service mark to separate, independently owned businesses. (Doc. 39 at Exhibit 1, ¶¶3-4). Thus, if ruralking.com ceased to operate the website selling the allegedly infringing mini bikes, Rural King Holding would not "undertake to perform substantially similar services," *Chan*, 39 F.3d at 1405; instead Rural King Holding would likely license another company to operate a website. In other words, Rural King Holding is not in the business of selling mini bikes. Rural King Holding is in the business of licensing to different companies that sell mini bikes. This is not sufficient to establish agency. *See Gallagher*, 781 F. Supp. at 1087*; Bellomo*, 488 F. Supp. at 746. Therefore, MMI has not stated a prima facie claim that ruralking.com is Rural King Holding's general agent in the state of Arizona.

      **B.**     **Personal Jurisdiction**

      Since the Court has determined that it may not impute ruralking.com's contacts to Rural King Holding, the Court must use only Rural King Holding's contacts to determine whether personal jurisdiction exists. However, MMI does not allege that Rural King Holding itself has any contacts in the state of Arizona. Furthermore, the Declaration of Mr. Melvin states that Rural King Holding is an Illinois corporation that: does not advertise, offer to sell, or sell the mini bike involved in this lawsuit; is not registered to do business in Arizona; does not own or lease any property in Arizona; does not pay Arizona taxes; and does not have offices, employees, equipment, operations, bank accounts, telephone listings, facsimile listings or registered agents in Arizona. (Doc. 39 at Exhibit 1, ¶¶9-10). Since the Court finds that Rural King Holding has no contacts with the state of Arizona, this Court cannot exercise personal jurisdiction over Rural King Holding. *See Int'l Shoe Co.*, 326 U.S. at 316 (1945) (Due Process Clause requires that nonresident defendants have certain *minimum contacts* with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice). Therefore, the Court grants Rural King Holding's motion to dismiss for lack of personal jurisdiction.

### C. Additional Discovery

MMI has alternatively asked this Court for additional time to conduct jurisdictional discovery. The Court denies this request.

When determining whether personal jurisdiction exists, courts "may order discovery on the jurisdictional issues. *Unocal*, 248 F.3d at 922. However, Courts should deny discovery requests where the plaintiff fails to show "that further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech., Ltd.*, 566 F.3d 1012, 1023 (Fed. Cir. 2009) (denying discovery request because "[plaintiff] provided the district court with no reasons for its request or particular areas to which discovery would be directed."). "Such a showing is especially important where, as here, the defendant enters declarations into evidence specifically denying certain jurisdictional allegations." *Id.*

MMI has not indicated to the Court any "particular areas to which discovery would be directed," *see Autogenomics,* 566 F.3d at 1023, nor has it provided any reasons why it could not determine what company operates ruralking.com, other than not having enough time to conduct the discovery. (Doc. 56 at 7). Without such reasons, the Court is not confident that "further discovery would elucidate the facts necessary to prove that the court has personal jurisdiction." *Autogenomics,* 566 F.3d at 1023. MMI has also failed to present evidence to rebut any of Mr. Melvin's Declaration, which denies MMI's jurisdictional allegations. The Court does not wish to impose additional discovery against Rural King Holding where the evidence suggests that the alleged patent infringement was actually committed by a separate legal entity. Therefore, the better course of action is to grant Rural King Holding's Motion to Dismiss and deny MMI's request for additional discovery against Rural King Holding.

### IV. Conclusion

For the foregoing reasons, Rural King Holding's Motion to Dismiss for lack of personal jurisdiction is granted and MMI's request for additional discovery is denied.

Accordingly,

**IT IS ORDERED** that Defendant Baja, Inc.'s Motion to File Exhibit Under Seal (Doc. 12) is granted. The Clerk shall seal Exhibit 3 of Docket 9.

**IT IS FURTHER ORDERED** that Defendant Rural King Holding's Motion to Dismiss (Doc. 39) is granted.

DATED this 3rd day of August, 2010.

James A. Teilborg
United States District Judge